IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PERLA HERRERA, | ) |
| *Plaintiff,* | ) ) ) |
| | ) No. 17 C 8839 |
| v. | ) ) Judge Virginia M. Kendall |
| CHICAGO POLICE OFFICER HECTOR FUENTES, | ) ) ) |
| *Defendant.* | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Perla Herrera sued Defendant Hector Fuentes for assault, battery, malicious prosecution, intentional infliction of emotional distress, and violation of her federal civil rights by using excessive force during an arrest. (Dkt. 1 Ex. A). Judge Charles Norgle granted summary judgment to Fuentes on Herrera's malicious-prosecution claim. (Dkt. 57). Fuentes prevailed in a jury trial on all remaining claims. (Dkts. 136, 137, 138). Herrera now moves for reconsideration of the summary-judgment ruling and for a new trial on all claims. (Dkt. 141). For the following reasons, the motion is denied. [141] The Court also considers Fuentes's motion for a bill of costs and denies the motion. [147]

### BACKGROUND

Perla Herrera lives fairly close to Hernandez Middle School and drives past it on occasion. One day while school was letting out and children were walking to their cars or to the cars of those who were picking them up. Herrera drove through an alley near the school and was attempting to drive to the intersection where the school is located. While in the alley, a traffic jam of sorts occurred because children were leaving the school and walking home or to various cars parked on the street. Some of

those cars were stopped in the alley where she was attempting to navigate her way to the intersection. Herrera noticed children "trying to squeeze through the alley" around some of the parked and moving cars. (Dkt. 57 at 2). Herrera took her cell phone out while in her car and recorded her observations. When she finally left the alley and turned the corner at the intersection of the school, she pulled up to the lane closest to the school where there was no parking allowed; she parked her car, and quickly approached a group of people, including Hector Fuentes—an off-duty Chicago Police Department officer and part-time security guard for Chicago Public Schools—to "show [her video to] the people with the yellow jackets, the Safe Haven people." (*Id*. at 2; Dkt. 48, Ex. A at 45). Fuentes was out in front of the school at the time as the students left for the day. Herrera approached him angrily to show him what she believed to be a serious problem. A physical altercation followed, which was recorded on her phone, although no video is shown, only the heated exchange between Fuentes and Herrera can be heard. In that audio altercation, Herrera admits that she hit Fuentes. Ultimately Fuentes arrested Herrera, and separate CPD officers arrived at the scene and transported her to the police station. (Dkt. 57 at 3–4).

Fuentes signed a criminal complaint against Herrera for misdemeanor battery, and she was charged with that crime. (Dkt. 57 at 4). Fuentes never spoke to an Assistant State's Attorney about Herrera's arrest or charges. (*Id.*) He never appeared in court, and the case against Herrera was ultimately dismissed. (*Id.*) Herrera sued Fuentes for assault, battery, malicious prosecution, intentional infliction of emotional distress, and violation of her federal civil rights. (Dkt. 1 Ex. A). She also named the City of Chicago as a defendant. (*Id.*) The case proceeded before the Honorable Charles R. Norgle. (*See id.*)

**Summary Judgment Order**

On November 20, 2019, Judge Norgle granted in part and denied in part Herrera's motion for partial summary judgment. (Dkt. 57). Judge Norgle denied the motion with respect to the claims against Fuentes for excessive force, assault, battery, and intentional infliction of emotional distress. (*Id.*) Judge

Norgle granted summary judgment on the claim against Fuentes for malicious prosecution and on all claims against the City of Chicago. (*Id.*) On October 6, 2022, the case was reassigned to this Court upon Judge Norgle's retirement. (Dkt. 96). At their first status hearing before this Court on October 20, 2022, the parties reported that discovery was complete other than the deposition of one expert witness, Dr. Angelos Halaris. (Dkt. 100). The Court set the deposition to take place by November 21, 2022, and set the jury trial to begin on December 5, 2022. (*Id.*)

Fuentes moved *in limine* to bar Herrera from testifying or arguing at trial that her arrest, detention, or prosecution lacked probable cause, citing Judge Norgle's order finding that probable cause existed for Herrera's arrest and granting summary judgment on malicious prosecution. (Dkt. 104 at 11–13). Herrera opposed the motion. (Dkt. 103 at 34). She argued that she should be permitted to raise the circumstances of her arrest, incarceration, and criminal prosecution because they caused and contributed to her severe emotional distress and aggravated her PTSD. (Dkt. 112 at 6–7). She did not challenge Judge Norgle's ruling. (*Id.*) Her proposed jury instructions included no proposals related to malicious prosecution or probable cause. (Dkt. 110). Herrera also never challenged Judge Norgle's ruling on probable cause or the dismissal of the malicious-prosecution claim until the Final Pretrial Conference on November 22, 2022—three years after summary judgment and less than two weeks before trial. (*See* dkt. 126 at 2; *see also* dkt. 132 at 68:15–72:8; dkt. 133 at 88:17–108:13). The parties filed supplemental briefing on Fuentes's motion *in limine*. (Dkts. 119, 124, 125). On December 1, Herrera filed her memorandum where she argued *for the first time* that Judge Norgle had analyzed the malicious-prosecution claim under the wrong legal standard and determined—incorrectly, according to Herrera—that probable cause for Herrera's arrest barred that claim. (Dkt. 125 at 2). Mere days before trial, she argued that her malicious-prosecution claim should proceed, despite its dismissal over three years earlier. (*Id.* at 3).

In ruling on Fuentes's motion *in limine* to bar testimony or argument on probable cause to arrest Herrera, the Court also reconsidered Judge Norgle's prior finding and grant of summary

3

judgment on Herrera's malicious-prosecution claim. (Dkt. 126). The Court found that reviving the dismissed claim at this stage of the proceedings would severely prejudice Fuentes at trial. (*See id.* at 3). Further, the Court held that the undisputed facts supported Judge Norgle's finding of probable cause and grant of summary judgment. (*Id.*) The Court stated:

> While Plaintiff is correct that probable cause must be charge-specific to bar a claim of malicious prosecution, the facts support a finding of probable cause for battery. *Holmes* [*v. Village of Hoffman Estates*], 511 F.3d [673,] 682 [(7th Cir. 2007)]. While the parties now dispute whether Plaintiff ultimately hit Fuentes, her statements in a contemporaneous video recording from the incident provide adequate support for a finding of probable cause of battery by Officer Fuentes. Plaintiff stated, "He pushed me, and I smacked him. Who does he think he is?" (Dkt. 119 Ex. 1 at 3:35). At another point in the video, Plaintiff states, "He pushed me, and I just pushed him." (*Id.* at 5:54). Plaintiff admitted in the moment to making "physical contact of an insulting or provoking nature" with Officer Fuentes, providing support for an arrest and charge of battery. 720 ILCS 5/12-3. Any argument of self-defense might serve as an affirmative defense but would not defeat a finding of probable cause. 720 ILCS 5/7-1(a); *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 416 (7th Cir. 1997). This Court will not reconsider the prior holding on probable cause.

(*Id.* at 3).

**Expert Witness Testimony**

Fuentes timely disclosed to Herrera the expert report of Dr. Angelos Halaris on September 14, 2022. (Dkt. 113-1, 113-2, 113-3). The report included his opinions, qualifications, experience, and the materials relied on in reaching his opinions. (Dkt. 113-2, 113-3). The report lacked Dr. Halaris's list of publications, prior testimony, and compensation. (Dkt. 113 at 10; Dkt. 141 at 9). The parties then discussed various dates for Dr. Halaris's deposition but had not agreed on a date when they first appeared before this Court. (Dkt. 113 at 12). At the October 20 status hearing, the Court denied the parties' request for 60 days to take the deposition, granted them until November 21 to take it, and set the matter for trial on December 5. (Dkt. 113 at 12; Dkt. 141 at 9). Plaintiff's

4

counsel then reviewed Dr. Halaris's report—apparently over a month after it had been disclosed[1]—and realized that information was missing. (Dkt. 141 at 9).

On November 3—seven weeks after receiving the report and two weeks after the status hearing—Plaintiff's counsel informed defense counsel that Herrera would seek to bar Dr. Halaris for failure to comply with the disclosure requirements of Rule 26(a)(2)(B). (Dkt. 141 at 10). Defense counsel made the required disclosures that same day. (*Id.*) Still, Herrera opted not to take Dr. Halaris's deposition and instead moved *in limine* to bar his testimony. (Dkt. 111 at 5–6). The Court denied Herrera's motion. (Dkt. 116).

**Jury Instruction**

Herrera proposed the following jury instruction:

When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.

If you decide that the defendant was negligent and that her negligence was a proximate cause of injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury. However, if you decide that the defendant's conduct was not a proximate cause of the plaintiff's injury, then your verdict should be for the defendant.

(Dkt. 110-2 at 4). Fuentes objected to the inclusion of the second paragraph because negligence was not an issue in the case. (Dkt. 110-2 at 4). Herrera then filed a modified instruction with the second paragraph:

---

[1] Plaintiff's counsel acknowledged at the pretrial conference that he should have reviewed it sooner than he did. He discovered the missing information more than five weeks after the report was tendered:

> The Court: So when you were in front of me on October 20th, right after you filed your joint status report, you would have – you should have known on that day that the 9/15 or 9/14 disclosure was not complete, right?
> Mr. Bustamante: If I had read it more thoroughly, I should have known. I did not read it thoroughly. I read maybe the first ten pages of the disclosure.

(Dkt. 132 at 49:11–17).

5

> If you decide that the defendant's conduct was intentional and that his conduct was a proximate cause of the injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury. However, if you decide that the defendant's conduct was not a proximate cause of the plaintiff's injury, then your verdict should be for the defendant.

(Dkt. 122-1 at 2). The Court gave an instruction that contained only the first sentence of the first paragraph and none of the second paragraph, before or after its modification. (Dkt. 135 at 29).

The jury trial proceeded December 5 through 9, 2022. (Dkts. 129, 130, 131, 134, 136). The jury heard the testimony of Herrera and Fuentes and others. They also watched the video and audio of the altercation a number of times. The jury found for Fuentes on all claims, and this Court entered judgment for Fuentes and against Herrera. (Dkts. 136, 137, 138). Herrera now moves the Court to reconsider its decision denying reconsideration of Judge Norgle's summary-judgment grant on the malicious-prosecution claim and for a new trial on this basis. (Dkt. 141). She also moves for a new trial, arguing (1) that the Court's denial of her motion *in limine* to bar Dr. Herrera's testimony prejudiced her, and (2) that the Court erred by failing to give her proposed jury instruction on proximate cause as modified. (*Id.*)

## DISCUSSION

**A.     Plaintiff's Motion to Reconsider Summary Judgment Ruling**

A party may move the Court to alter or amend a judgment within 28 days of entry. Fed. R. Civ. P. 59(e). Relief under Rule 59(e) is generally considered extraordinary. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 528 (7th Cir. 2022). "To prevail on a motion for reconsideration under Rule 59, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)

6

("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact."). "Rule 59 is not a vehicle for rearguing previously rejected motions." *Oto*, 224 F.3d at 606.

In ruling on Fuentes's motion *in limine*, the Court reconsidered sua sponte Judge Norgle's summary-judgment order dismissing Herrera's malicious-prosecution claim.[2] (Dkt. 126 at 3). The Court considered Herrera's arguments for reversing that decision provided in her supplemental briefing. (*See* dkt. 125). Although the Court agreed that Judge Norgle issued his ruling on the wrong basis—finding probable cause to arrest Herrera for assault—the Court's review of the record found Fuentes also had probable cause to charge Herrera with battery. (Dkt. 126 at 3). Herrera said in a video recording from the scene, "He pushed me, and I smacked him. Who does he think he is?" (*Id.* (citing dkt. 119 Ex. 1 at 3:35)). She also stated, "He pushed me, and I just pushed him." (*Id.* (citing dkt. 119 Ex. 1 at 5:54)).

In her motion to reconsider the ruling, Herrera continues to argue that Judge Norgle based his summary-judgment ruling on the wrong legal standard. (Dkt. 141 at 2–4). But this Court found alternative grounds under the proper, charge-specific standard to support a finding of probable cause for battery. (Dkt. 126 at 3). The malicious-prosecution claim was therefore barred. Even if Judge Norgle initially made an error of law in his reasoning, this Court found the judgment legally supported by evidence in the record, so any error was cured.

Herrera's sole response to this Court's reasoning for maintaining the summary-judgment ruling was her purportedly consistent denial that she ever struck Fuentes. (Dkt. 141 at 4). She

---

[2] The Court noted in its December 2 order granting Fuentes's motion *in limine* that, "To date, Plaintiff still has not moved for reconsideration." (Dkt. 126 at 2). Herrera contends that she "asked the district court to reconsider Judge Norgle's grant of summary judgment" in her Memorandum Regarding Issues Raised by the Court on Probable Cause and Malicious Prosecution. (Dkt. 141 at 5 n.1). But providing the Court with requested supplemental briefing on an issue is not the same as filing a motion under Rule 59(e) or Rule 60(b). In ruling on Fuentes's motion *in limine*, the Court reconsidered sua sponte Judge Norgle's decision, according to its discretion. *See Galvan v. Norberg*, 678 F.3d 581, 587–88 (7th Cir. 2012) (explaining that, although a second judge should generally refrain from reopening issues decided in earlier stages of the case absent extraordinary circumstances, the decision to do so is discretionary and does not preclude reconsidering first judge's rulings on issues).

claims Fuentes had invented the battery as a pretext for arresting and charging her. (*Id.*) Herrera urges that a jury should consider the issue of probable cause with such facts in dispute. (*Id.* at 4–5). But the evidence showed that *she admitted to physical contact with Fuentes*. The video was played to the jury and entered into evidence. Herrera's own admissions gave probable cause to arrest and charge her with battery. She fails to show how this Court's ruling demonstrates a "manifest error of law or fact." *See Oto*, 224 F.3d at 606.

Herrera also argues that Judge Norgle erred in granting summary judgment on an element of the malicious-prosecution claim that the parties had not briefed and argued. (Dkt. 141 at 5–6). This argument has no merit. The Court "may enter summary judgment sua sponte on an issue not explicitly argued if the losing party is on notice that she has to come forward with all her evidence." *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 174 (7th Cir. 2011). Fuentes moved for summary judgment on the malicious-prosecution claim, arguing that Herrera could not meet the elements of termination of the proceedings in the plaintiff's favor or malice on the defendant's part. (Dkt. 47 at 3–5). Fuentes did not raise probable cause, so Herrera was not on notice that Judge Norgle would consider whether probable cause existed for the arrest and battery charge. But in her motion to reconsider, Herrera offers no additional evidence that would have saved her from summary judgment on that issue. Rather, the evidence cuts the other way. She has not shown that the lack of opportunity to brief the issue prejudiced her, just that she disagrees with the outcome. *See Kellar*, 664 F.3d at 174 ("[A] litigant . . . must show that notice and an opportunity to respond would have mattered." (quoting *Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996)).

The Court denies the Rule 59(e) motion to reconsider the grant of summary judgment to Fuentes and against Herrera on her malicious-prosecution claim.

**B.** **Plaintiff's Motion for a New Trial Pursuant to Rule 59**

Under Rule 59,[3] the Court may grant a new trial "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Whitehead v. Bond*, 680 F.3d 919, 927 (7th Cir. 2012) (quoting *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)). A new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Id.* at 928 (citing *Clarett*, 657 F.3d at 674).

Herrera argues that the Court erred in two ways that prejudiced her, such that her trial was unfair. The Court takes each in turn.

**1.** **Expert Testimony**

Parties must make several disclosures of their testifying expert witnesses. Fed. R. Civ. P. 26(a)(2)(B). In addition to the witness's opinions and their basis, a party must disclose, "a list of all publications authored [by the witness] in the previous 10 years," a list of all other cases where the witness has testified in the last 4 years, and a statement of the witness's compensation. Fed. R. Civ. P. 26(a)(2)(B)(iv), (v), (vi). Herrera argues that the Court should have barred the expert testimony of Dr. Angelos Halaris because Fuentes failed to timely make all required disclosures. (Dkt. 141 at 9–10). But the Court did not err in admitting Dr. Halaris's testimony because Fuentes's failure to comply with Rule 26(a) was harmless and did not prejudice her.

In deciding whether non-compliance with Rule 26(a) is harmless, the court considers: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the

---

[3] Herrera moves "pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure." (Dkt. 141 at 1). Federal Rule of Civil Procedure 50(b) provides for the movant to "file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). A Rule 50(b) motion may be granted "only on grounds advanced in the pre-verdict motion [made under Rule 50(a)]." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 659 (7th Cir. 2021). Herrera did not move before the jury's verdict for judgment as a matter of law under Rule 50(a), so she cannot move post-verdict under Rule 50(b). Moreover, it is clear from her motion that she seeks only a new trial under Rule 59. The standard for Rule 59, then, governs.

party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Herrera fails to advance a single new argument as to how the untimely disclosure prejudiced her. Herrera's motion for a new trial based on the late disclosure repeats nearly verbatim the arguments made in her motion *in limine* to bar his testimony. (*Compare* dkt. 111 at 5–7 *with* dkt. 141 at 9–11). She merely repeats the assertion that she was "severely prejudiced" because she "was deprived of information that could be used to test bias or prejudice or be used for impeachment." (Dkt. 141 at 9–11). But Fuentes timely disclosed the critical substance of Dr. Halaris's testimony: his opinions, their basis, and his qualifications. Herrera also had the opportunity to depose the witness but declined to do so, opting instead to move to bar his testimony entirely for technical noncompliance with Rule 26(a). Finally, other than generally citing the opportunity she missed to probe for potential grounds for impeachment or test bias, she has not said how she would have used any information gained from earlier disclosure to impeach him, let alone how it would have made any appreciable difference in her case.

She also ignores that if the delayed disclosures prejudiced her, then her own counsel's delayed review of Dr. Halaris's report substantially contributed to this outcome. Plaintiff's counsel failed to read Dr. Halaris's report for more than a month after receiving it. He then waited to notify defense counsel of the report's missing disclosures. It is disingenuous for Herrera to argue that she had insufficient time to investigate Dr. Halaris's publications and prior testimony for impeachment and bias when her counsel did not even seek this information for several weeks after Fuentes first tendered the report. Any potential prejudice might have been cured had Plaintiff's counsel timely

10

acted. Moreover, when notified of the omission, defense counsel supplied the information *the same day*. This suggests inadvertence rather than bad faith.

Fuentes's failure to timely comply with Rule 26(a)(2)(B)(iv), (v), and (vi) was therefore harmless. The Court did not err in admitting Dr. Halaris's testimony at trial.

### 2. Jury Instruction

A Court may grant a new trial if it finds that (1) a jury instruction misstated or insufficiently stated the law and (2) that the instruction could have caused prejudice by confusing or misleading the jury. *See Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012); *see also Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 733 (7th Cir. 2013). Here, the jury instruction that the Court gave correctly and sufficiently stated the law on proximate cause.

The Court gave the short form of the Illinois Pattern Jury Instruction, Civil, No. 15.01 (Aug. 2021) on proximate cause, without the instruction's bracketed content.[4] This was appropriate in the circumstances of this case. According to the IPI Committee Notes, "[t]his instruction in its entirety should be used when there is evidence of a concurring or contributing cause to the injury or death." IPI 15.01 Comm. Notes at 1. Herrera argues that there was evidence that her pre-existing Post-Traumatic Stress Disorder (PTSD) was a contributing cause to her injuries. She argues that the jury should have received the full instruction because—although Herrera's PTSD was caused by events other than Fuentes's acts—Fuentes's conduct could also

---

[4] IPI 15.01 provides:

> When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.]
> [If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of the injury to the plaintiff, it is not a defense that [something] [or] [someone] else may also have been a cause of the injury. However, if you decide that the defendant's conduct was not a proximate cause of the plaintiff's injury, then your verdict should be for the defendant.]

11

have caused Herrera's injuries by aggravating her PTSD. Without the instruction, she contends, the jury may have been confused and found that Fuentes was not responsible for Herrera's underlying PTSD, even if they believed his conduct caused her emotional distress.

But Illinois courts have held that the full instruction should not be given when the only other possible cause of the harm in question was the plaintiff's predisposition to the injury. *See* IPI 15.01 Comm. Notes at 2 (citing *Lounsbury v. Yorro*, 464 N.E.2d 866, 870–71 (Ill. App. Ct. 1984)). Such is the situation here. Herrera argued that she suffered severe emotional distress—her injury— because of Fuentes's conduct. (Dkt. 1 Ex. A at 4 ¶ 29, at 10 ¶ 28). Herrera argues that her PTSD was a contributing cause to her injury, along with Fuentes's conduct. (*See* dkt. 122). But Herrera's PTSD was a condition that made her more susceptible to emotional injury, so the full instruction was not appropriate. *See Lounsbury*, 464 N.E.2d at 870 ("[I]t is error to give the full version of I.P.I. Civil No. 15.01 where the alleged other cause is a predisposition on the part of a plaintiff to sustain the particular injury. . . . [T]he proximate cause instruction deals only with the conduct which produced the plaintiff's injuries and does not relate to any prior or subsequent injuries."). Additionally, the long-form proximate-cause instruction deals only with the *conduct* that produced the plaintiff's injuries and is only appropriate "where there is evidence that the actions of another *person* contributed to the injury." *Lounsbury*, 464 N.E.2d at 870; *see also Dohse v. Ekhaese*, 2013 IL App (4th) 121076-U ¶ 50 (affirming trial court's refusal to give long form of IPI Civil No. 15.01 when pre-existing medical condition may also have contributed to injury).

Furthermore, any error in failing to give Herrera's proposed instruction did not prejudice her. The argument that Herrera's underlying PTSD contributed to the emotional distress caused by Fuentes's conduct is relevant here to damages, not proximate causation as an element of liability. *See Harding v. Amsted Indus., Inc.*, 658, N.E.2d 1208, 1215 (Ill. 1995) (holding that refusal to give

12

long form proximate-cause instruction was proper because preexisting medical condition was relevant only to damages even if it contributed to plaintiff's injury along with defendant's conduct). The jury received instruction on the elements of excessive force, battery, and intentional infliction of emotional distress. (Dkt. 135 at 18–24). No elements of any claim included the term "proximate cause." (*See id.*) The jury was then instructed that if they found for Fuentes on the question of liability, then they were not to consider the question of damages. (*Id.* at 25). The Court then instructed the jury on damages. (*Id.* at 26–29). The Court stated, "In fixing the amount of money which will reasonably and fairly compensate the plaintiff, you are to consider that an injured person must exercise ordinary care to obtain medical treatment. Damages proximately caused by a failure to exercise such care cannot be recovered." (*Id.* at 28). The Court then defined proximate cause. (*Id.* at 29) As a whole, then, the instruction on proximate cause related only to Herrera's damages if Fuentes were found liable for any of Herrera's injuries. But the jury did not find Fuentes liable. It therefore did not consider damages, so any instruction on proximate cause in the context of damages could not have prejudiced Herrera.

In sum, the Court denies Herrera's motion for a new trial. (Dkt. 141). She has not shown that the Court's rulings on the admission of expert testimony or the failure to give her proposed jury instruction made her trial unfair.

C.  **Defendant's Motion for Bill of Costs**

Defendant Hector Fuentes presents a bill of costs allowable under 28 U.S.C. § 1920, pursuant to Local Rule 54.1 and Federal Rule of Civil Procedure 54(d). (Dkt. 147). Fuentes seeks $6,883.21 in allowable costs. (*Id.* at 1). Rule 54 indicates the prevailing party should be allowed costs other than attorney's fees. Fed. R. Civ. P. 54(d)(1). Rule 54's presumption in favor of allowing costs to the prevailing party is "difficult to overcome," and the Court must award costs

"unless it states good reasons for denying them." *Lange v. City of Oconto*, 28 F.4th 825, 845 (7th Cir. 2022); *see also Weeks v. Samsung Heave Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1995). "Generally, only misconduct by the prevailing party worth of a penalty or the losing party's inability to pay will suffice to justify denying costs." *Id.* (quoting *Weeks*, 126 F.3d at 945). Herrera objects to Fuentes's bill of costs on the latter basis.

The Court can properly consider a plaintiff's indigency in granting or denying taxable costs under Rule 54(d), and a finding of indigency may overcome the general presumption of awarding costs to the prevailing party. *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983); *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (declining to abandon indigence exception to Rule 54(d)). *But see McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994) (holding indigency does not automatically shield unsuccessful litigants from costs and discussing policy behind rule). The Court first must make a threshold finding that the losing party cannot pay the court-imposed costs now or in the future, and she must provide the Court with sufficient documentation to support such a finding. *Lange*, 28 F.4th at 846 (citing *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019)). The Court then considers "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case." *Id.* (citing *Rivera*, 469 F.3d at 636).

Herrera has shown that she cannot pay the full amount of Fuentes's costs, either now or in the future. She is 54 years old and single, and she shares a rented garden apartment with her fiancé. (Dkt. 151-1 ¶ 2). She left her job when diagnosed with breast cancer, and because of her medical conditions—including neuropathy of the right arm and hand, congestive heart failure from chemotherapy, and Post-Traumatic Stress Disorder—she cannot work. (*Id.* ¶¶ 3–5). Her only source of income is from social security disability benefits, which provide $1,392 per month. (*Id.*

14

¶ 6). Her annual income thus barely exceeds the poverty guidelines established by the U.S. Department of Health and Human Services.[5] Her monthly expenses exceed this monthly income, and she provides a detailed schedule of these expenses. (*Id.* ¶ 7). Her only assets are home furnishings and a used 2007 Chevrolet, though it has broken down. (*Id.* ¶ 8). She relies on her fiancé and friends to make ends meet. (*Id.* ¶ 9). This suffices to show Herrera's indigency. *See Rivera*, 469 F.3d at 635 ("This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses."). Because Herrera's monthly social security benefits do not cover her quite modest expenses, she cannot pay the full amount of Fuentes's bill of costs. She also cannot work and lives off social security alone, so she will not be able to pay the costs in the future.

Weighing the factors identified in *Rivera*, the Court concludes that she should not be assessed costs. First, the amount of the costs that Fuentes seeks here—though not necessarily high for many federal cases, *see Lange*, 28 F.4th at 848 (noting bills of costs in cases that exceeded $45,000 and $200,000)—represents nearly five months of income for Herrera. Even if the Court reduced the cost award to a fraction of the amount sought, Herrera will not be able to pay it when her expenses already exceed her fixed income and she cannot work, now or in the future. *See, e.g., Jones v. Parkland Hosp., Inc.*, 2021 WL 7907673, at *1 (N.D. Ind. Feb. 8, 2021) (finding that the amount prevailing defendant sought to recover—$1,443.71—would constitute an inordinate burden for indigent plaintiff); *Woods v. Obaisi*, 2021 WL 5415146, at *1 (N.D. Ill. Nov. 19, 2021) (declining to award $1,350 in costs on indigent plaintiff with no earning potential).

Next, the record demonstrates that Herrera litigated in good faith. Nothing in the record shows that she has abused the legal process or brought her claims just to harass Fuentes. *See Lange*,

---

[5] Herrera's annual income is $16,704, which is only $2,124 above the 2023 HHS Poverty Guidelines of $14,580 for one person. *See* https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines (last visited May 2, 2023).

15

28 F.4th at 846–47 (citing *Popeil Bros. v. Schick Elec., Inc.*, 516 F.2d 772, 776 (7th Cir. 1975)). On the contrary, most of her claims survived summary judgment, so she had a sound factual and legal basis for bringing them. Finally, her claims—though not complicated, legally or factually—were sufficiently close to justify bringing them to trial. *See U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 804 F.3d 889, 894 (7th Cir. 2015) ("[T]he closeness of a case can be a reason for denying an award of costs to the prevailing party in cases in which the losing party is indigent . . . ."). Herrera's encounter with Fuentes was sufficiently serious and concerning to outside observers that someone called 911 to report it. She was charged criminally for her alleged part in that encounter, but the charges were dropped. Although the trial lasted only one week and the jury did not deliberate for more than about five hours, it required making nuanced factual findings, particularly for Herrera's excessive-force claim.

The Court, then, finds that Herrera has overcome the presumption in favor of awarding costs because she is indigent, and the *Rivera* factors weigh in her favor. The Court denies Fuentes's motion for costs. (Dkt. 147).

## CONCLUSION

For these reasons, the Court denies Herrera's motion to reconsider the grant of summary judgment on her malicious-prosecution claim and her motion for a new trial on all claims. [141] The Court denies Fuentes's motion for an award of costs. [147]

_____
Virginia M. Kendall
United States District Judge

Date: May 23, 2023

16